# UNITED STATES DISTRICT COURT

for the

Northern District of Florida

Jacksonville Division

RECEPTION AND MEDICAL CENTER
DATE: 7-17-19
INMATE INITIALS: NF

Case No. 3:19-cv-1079-J-34JRK
*(to be filled in by the Clerk's Office)*

Nathan G. Fox

Plaintiff(s)
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Dr. V. Montoya, Lacey Barnett, Megan Perry, O. McKenzie, Mark S. Inch, J. DeBell, A. Negron, Dr. Bassa

Defendant(s)
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

FILED
2019 SEP 23 AM 11:51
CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Prisoner Complaint)

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name: Nathan G. Fox
All other names by which you have been known:
ID Number: R50090
Current Institution: RMC-Main Unit
Address: PO Box 628
Lake Butler (City) FL (State) 32054 (Zip Code)

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

Name: Dr. V. Montoya
Job or Title *(if known)*: Oncologist
Shield Number: N/A
Employer: RMC
Address: PO Box 628
Lake Butler (City) FL (State) 32054 (Zip Code)

☑ Individual capacity ☑ Official capacity

Defendant No. 2

Name: Lacey Barnett
Job or Title *(if known)*: RN-Nurse
Shield Number: N/A
Employer: RMC
Address: PO Box 628
Lake Butler (City) FL (State) 32054 (Zip Code)

☑ Individual capacity ☑ Official capacity

Defendant No. 3

Name: Megan Perry
Job or Title *(if known)*: RN-Nurse
Shield Number: N/A
Employer: RMC
Address: Po Box 628
Lake Butler (City) FL (State) 32054 (Zip Code)

☑ Individual capacity ☑ Official capacity

Defendant No. 4

Name: O. McKenzie
Job or Title *(if known)*: RN-Nurse
Shield Number: N/A
Employer: Sumter C.I.
Address: 9544 CR476-B
Bushnell (City) FL (State) 33513 (Zip Code)

*See Attachment 1.

☑ Individual capacity ☑ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

The 8th Amendment deliberate indifference; cruel & unusual punishment. 14th Amendment failure of due process and unsafe condition. Medical Malpractice Florida law §768.28

C. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Section 1-B

Defendants

5. J. DeBell
Warden
Sumter CI
Bushnell, FL 33513 √ individual capacity √ official capacity

6.

Warden
RMC
PO Box 628
Lake Butler, FL 32054 √ individual capacity √ official capacity

7. Mark S. Inch
Secretary of FDOC
Florida Department of Corrections
501 S. Calhoun St.
Tallahassee, FL 32399-2500 √ individual capacity √ official capacity

8. Dr. A. Negron
Chief Health Officer
Sumter CI
9544 CR 476-B
Bushnell, FL 33513 √ individual capacity √ official capacity

9. Dr. Bassa
N/A
RMC
PO Box 628
Lake Butler, FL 32054 √ individual capacity √ official capacity

Basis of Jurisdiction Section 2-D

1. Defendant Dr. V. Montaya is the Oncologist for the Reception Medical Center (RMC) and is generally responsible for ensuring the provision of medical care to inmates with Cancer issue(s), as well as for inmates with hemophilia issue(s). Specialized treatment(s) and/or evaluation are also provided by him.

2. Defendant Lacey Barnett is a nurse (RN) employed at Reception Medical Center (RMC) who is responsible for ensuring the provision of medical care to inmates with Cancer issue(s), as well as for inmates with hemophilia issue(s). All treatment(s) is administored by her at RMC's Cancer Center.

3. Defendant Megan Perry is a nurse (RN) employed at Reception Medical Center (RMC) who is responsible for ensuring the provision of medical care to inmates with Cancer issue(s), as well as for inmates with hemophilia issue(s). All treatment(s) is administored by her at RMC's Cancer Center.

4. Defendant O. Mckenzie was the nurse (RN) employed at Sumter Correctional Institute (SCI) who was responsible for ensuring the provision of medical care to inmates. He was charge nurse at incident.

5. Defendant Mark S. Inch is the Florida Secretary of Department of Corrections. He is generally responsible for ensuring inmates Safety, Care, Custody, and Control. Also, the supervision and discipline of all Correctional Staff of Florida Department of Corrections.

6. Defendant J. DeBell was the Warden at Sumter Correctional Institute. He is responsible for supervision and discipline of all Correctional Staff at Sumter CI. Also, responsible for reviewing all grievances filed by Sumter CI inmates

7. Defendant A. Negron was the Chief Health Officer at Sumter Correctional Institute. He is responsible for the supervision and discipline of all medical staff at Sumter CI. Also, responsible for the safety and ensuring medical care, treatment, and evaluations.

8. Defendant Dr. Bassa is the Medical Administrator at Reception Medical Center, and is generally responsible for ensuring the provision of medical care to inmates at RMC and specifically for scheduling medical appointments outside the prison when inmate(s) needs specialized treatment or evaluation.

9 Defendant Elizabeth Mallard is the Asst. Warden at Reception Medical Center and is generally responsible for the supervision and discipline of Correctional and medical staff.

All the defendants have acted, and continue to act, under color of state law at all relevant to this complaints.

N/A

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

* Pleas See attachments (Basis of Jurisdiction Section 2-D)

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☑ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)*

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.
The events all happened in a institution(s). Sumter Correction Institution and Reception Medical Center.

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.
All relevant events has took place at Sumter Correction Institution and Reception Medical Center. Dates vary. 11-4-17; 12-24-18; 1-30-19; and ~~[illegible]~~ 5-11-19 to 8-11-19, 11-7-17.

C. What date and approximate time did the events giving rise to your claim(s) occur?

N/A

D. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)* On 11-4-17, I was stabbed by two inmates at Sumter C.I. On 12-24-18, I was having a internal bleed in my right ankle due to my severe medical condition; hemophilia A. Didn't recieve my needed Factor 8 medication until day(s) later. On 1-30-19, I was hit with a lock by a inmate in the head. Didn't recieve my needed Factor 8 medication until hours to day(s) later. On 5-11-19, I had my port in my left chest infected because RMC's nurses at the cancer center refuse to access/manage my Port. This issue lead me to have my port to get infected yet again On 8-11-19, because of nurses refusal to access/manage the port. To date, I have my port removed from my left chest. I had gone through a long Periods of time in pain though I had ask for the removal of my port since 5-13-19. *Please see attachments for futher details of claims/ Statements of facts.

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive. I was Stabbed once in my neck, once in my right shoulder, and once in my right elbow. My Factor 8 medication was delayed for several hours while I continued to bleed out. On 1-30-19, I was hit by a lock in the head and above my left eye. Again didn't recieve any factor 8 medication until days later. On 8-11-19, my port had got infected for the second time, which lead to it getting removed. Though I was having much pain yet never got my Factor 8 infustion until latter. Through out my 11 plus year incarceration I never recieved the proper or needed medical attention that is required for a person with severe hemophilia A.
On 1-30-19, I was hit with a lock by another inmate 3 times in the head while being housed at RMC's I-Block dormitory.

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims. I would like to be paid 5.5 million dollars for damages and pain/suffering. I would like for newly made procedures/protocols made and in place that all hemophiliacs will receive proper medical treatment within the Florida Department of Corrections. And for a medical release for the inability for the Florida Department of Corrections to be able to provide proper medical care at RMC, or afford to properily train RMC's staff concerning my medical condition. Also, a temporary restraining order against all named defendants until all court issues are resolved. All new medical procedures/protocols should be designed from the Emergency Care for Patients with Hemophilia, provided by The Hemophilia Treatment Center in Tampa, Florida

I am a 31-year old currently under the care of the Florida Department of Corrections for the past 11 plus years. I have been suffering the affects of Severe hemophilia A since birth. Hemophilia is a genetic disorder characterized by a deficiency or absence of one of the clotting proteins (factor 8) in plasma. Persons with hemophilia do not bleed faster than others, rather the bleeding is continuous. Significant blood loss can occur if factor treatment is delayed.

The treatment for internal and/or external bleedings for hemophiliacs involves replacing the deficient factor as the first course of action. This requires intravenous infusion of commercial factor concentrates. Specific doses, additional drugs, and medical interventions depends upon the site and severity of bleeding. Once factor replacement therapy has been infused, diagnostic procedures and examinations can begin.

Persons with hemophilia should not be force to wait at anytime for factor replacement. The longer he waits, the more bleeding takes place. If the bleed is in a closed space, the accumulation of blood will cause surrounding tissue damage, destruction of joint or muscle, decrease mobility and function, and enhance pain. Also, if not treated promptly permanent disabilities can form as well as death.

The Statement of Facts provided by the plaintiff will show the totality of the circumstance in which the deliberate indifference to my severe medical needs, the unsafe conditions, and medical malpractice/negligence done by named defendants has violated plaintiff's rights and constituted cruel and unusual punishment, failure of due process, violation under the 8th and 14th amendment to the United States Constitution. Also, violation under the West's F.S.A § 768.28 of the State of Florida.

The Plaintiff has been and will continue to be irreparably injured by the conduct of the ~~defen~~ defendants unless this court grants him the requested reliefs which the plaintiff seeks.

# Statement of Facts for 4-D

On 11-4-17, I was assulted by two inmates with Knives while I was leaving Sumter CI's Rec yard. After the incident, I had found officer Belemy to report what took place and that I am a Severe hemophiliac who needs medical attention as soon as possible. Officer Belemy had handcuffed me than escorted me to Sumter's Medical department. I was bleeding none stop from my neck/back, right elbow, and a couple of cuts on my left ear.

Once I arrived at Medical I was met by Captain Rutledge and nurse Moore down the hallway. I quickly explained to Captain Rutledge, nurse Moore, and Officer Belemy what had happened on the Rec yard and what hemophilia is, also the danger of the situation at hand. I was asked by nurse Moore, "what normally happens to me in a emergency situation?" I had answered, "with a extra dose of my factor 8 to help control the bleeding and you'll most likely want to send me out to the nearest hospital." Nurse Moore was assesing my wounds while I was talking and was shock by how badly I was bleeding. Captain Rutledge, Officer Belemy, and nurse Moore continued to ask me more questions concerning my medical condition since they were not familiar with hemophilia or trained to handle me in a emergency situation(s).

I was than lead by Nurse Moore to the ER in the back of Medical. She pulled 6,000 units of my factor 8 medication to reach room tempature before administration/infusion through intravenious my arms. RN, O. Mckenzie was called back from G-dorm (confinement). Once nurse Mckenzie had arrived to the ER he quickly began ranting about why I was doing here?, Why was my factor 8 medication was out?, and many other disheartening statements about my well-being. Nurse Moore tried to explain to nurse Mckenzie about the whole situation, the amount of blood lose, and the importance behind me to get a extra dose of my factor 8. He had completely ignored nurse Moore and went towards my medication on the table, grabbed it all up, threw it back in the refigorator while yelling, "Listen to me!", "Put this shit away!", "I am in charge!, and "I don't care if he bleeds out!!!"

Captain Rutledge and Officer Belemy stood by as nurse Moore as well as myself pleaded again about the importance behind me getting my factor 8 so I could start clotting. But, nurse Mckenzie remained very adimant about me not receiving any extra factor 8 medication or if I bleed to death. Nurse Mckenzie has no knowledge about my severe medical condition or medical needs. He rather had watch me bleed and in extreme pain.
Finally I was sent out EMS a hour later. I was sent to St. Joseph's Memorial hospital after 20 minutes debating on what type of code I fell under and which hospital I should go to. I was again assess by St. Joseph's nursing staff. I was sutured before I could get any of my factor 8 medication. Once I got back to Sumter CI I was brought back to Medical and laid on a exsaming table in much pain. Nurse Mckenzie would not let any nurse clean up any of the blood left on me or give me any pain medication though they had called the doctor. Hours later I was put in G-dorm (confinement) with zero attention by Warden DeBell who was informed I was a hemophiliac and what had happened to me. I did not receive the needed medical care until 2-3 days later when I was finally housed in medical. Dr. A. Negron was the Chief Health Officer at Sumter. He had never corrected any of the life-threatenings wrongs committed by nurse Mckenzie, though he knew about my severe medical needs and medical condition... Even Dr. Montoya was informed about the situation and refuse to place any procedure/protocol for emergency situation for me as a hemophiliac.

# Facts for Section 4-D

On 12-16-17, I had wrote a formal "medical" grievance (#1712-307-054) to the Asst. Warden of Sumter CI (though J. DeBell, Warden of Sumter CI had signed it) about Dr. A. Negron's reference to FDOC policy that did not meet my severe medical needs. According to Dr. Negron there is FDOC policy requiring the health services department to make/create special emergency procedure and/or treatment for any specific inmates, and there is no such thing as an emergence dose of my factor 8 medication. Also, that only a physicans/PA/ARNP can give a nurse a verbal or written order to dispense my factor 8 medication, other than what is currently prescribed to me.

The formal grievance that was written at this time was due to me getting stabbed by two inmates on the Rec yard on 11-4-17. As a severe hemophiliac I was not allowed to have a extra factor 8 dose by O. McKenzie though there was a emergency situation that could of easily turned life-threaten. But, due to Mr. McKenzie's decision to refuse me that needed factor 8 medication, I was allowed to continue to bleed out and remain in pain, without any futher medical attention until the ambulance had arrived at the institution to transfere me to St. Joseph's memorial hospital in Tampa.

Sadly, Mr. McKenzie and Dr. Negron as well as Mr. DeBell were aware that I am a severe hemophiliac A patient, and that the situation which I was badly hurt was possible for me to be deadly. Yet, I was refuse proper medical care and was denied throughout the grievance process because there was no policy/procedure made for me in case of emergencies. Also, I have been at Sumter CI for 10 years and there never been a initative on Dr. Negron or Mr. DeBell's part.

# Statement of Facts for 4-D

On 1-1-19, I was being housed at RMC's I-Block dormitory. In the morning I awoke in my two man cell with my right ankle swollen and very painful. As a severe hemophiliac I knew I was having a internal bleed in my ankle. A hallmark for hemophiliacs is joint and muscle bleeds. I had to limp painful to the officer's station outside of wing 2 of I-Block. Sgt. Moody was the officer I spoke to. Sadly, since Sgt. Moody was not familiar with my severe medical condition or needs he ignored me, telling me to go back to my cell. After some time had pass and no medical emergency I had manage to sneek out of I-Block and found a Sgt. of Security 9 and get the ok to go to RMC's Urgent Care. Once arriving to Urgent Care I was met by their nurses. Though it was obvious my right ankle was swollen and I was in much pain and could barily walk I could not get the medical attention I needed, which was my factor 8 medication. Though I would have gotten my schedule factor 8 medication on that day at the Cancer Center, but it was closed for the holidays, I was refused my medication and was sent back to my dorm by Urgent Care's nursing staff and by Dr. Bassa who claimed I'll be fine until that upcoming Wensday when the Cancer Center would be open again. Also, I was refused medical attention because Dr. Bassa claimed "it is a Oncology issue..." I was left to limp around in much pain until Wensday, and going up and down the three (3) flights of stairs each day in I-Block. So, I could go to the chow hall or call-outs.

Statement of Facts 4-D

On 6-7-19, I was seen by Dr. Montoya for my 2 to 3 months "Chronic" appointment. Once again I had informed him that my port in my left chest was still not being access by Lacey Barnett or Megan Perry at the Cancer Center. Dr. Montoya had ignored me about my concern and mentioned how my factor 8 levels were "kind of low", and he was going to increase my factor 8 medication from 7,500 units to 9,000 units twice a week. I had tried to remind him that I am a severe hemophiliac and how being such that naturally my factor 8 levels are going to be low. Also, that I haven't been experiencing any bleeds since my 1-1-19 right ankle bleed and 1-30-19 when I was hit by a lock by another inmate while being housed in RMC's I-Block. Dr. Montoya still wanted to raise my factor 8 medication even though he was warn about the life-threatening issues if he continued to increase my medication without any sound medical reasoning toward a person with hemophilia.

I was force to take my scheduled factor 8 infusion on 6-14-19. I had to Lacey Barnett and Megan Perry how I had experience a severe headache, upset stomach, dizziness, and few other side-effects. I was advise by both nurses to refuse all my factor 8 medication if I didn't like my treatment plan by Dr. Montoya.

# Statement of Facts 4-D

On 5-11-19, I had went to RMC's Urgent Care concerning the pain, redness, and swelling around my port in my left chest. I was ask by Urgent Care staff when my port was last access for my Factor 8 infusions. I had explained that it was last access around-about a few months when Lacey Barnett and Megan Perry refused to access my port due to their inability to access, though I was sent out for a CT Scan and was given the approval by the Specialist at Jacksonville Memorial hospital, Dr. Montoya, and Dr. Robinson to continue to use my port. Several blood test were proformed by the Urgent Care staff (though obvious signs shown it was infected). The tests came back positive for a infection. I was place on several antibiotics for 10 days.

On 5-13-19, I wrote a inmate request to HSA, Roberts asking to have my port removed since Lacey Barnett and Megan Perry refused to access port before the infection and that it was infected at the time.

On 5-23-19, I had spoke with Lacey Barnett and Megan Perry at the Cancer Center during my scheduled factor 8 infusion. I had ask about if they would be accessing my port again since the infection had cleared up and Dr. Robinson had given me the approval during a follow-up appointment. Both Lacey Barnett and Megan Perry still refused to access my port. Lacey Barnett mentioned, "I have a lot of veins in my arms to use..."

On 5-31-19, my 5-13-19 inmate request was answered by the Executive Nursing Director, A. Weseman. She had stated, "Dr. Montoya and Dr. Bossa have been consulted about removing your port. Pending their approval on appointment will be made to remove your port."

On 6-7-19, I was seen by Dr. Montoya for my 2 to 3 month "Chronic" clinic appointment. I had informed him that Lacey Barnett and Megan Perry still were refusing to access my port and were accessing my arms instead to give me my factor 8 medication. Dr. Montoya didn't make any effort to correct Lacey Barnett or Megan Perry though he had approved to access my port. Dr. Montoya was more interested in increasing my factor 8 medication 7,500 units to 9,000 units.

On 7-31-19, I was seen by Dr. Robinson for a follow-up about the head injury I had suffered while I was being housed in I-Block, where I was hit with a lock by another inmate on 1-30-19. I had ask him if the nurses at the Cancer Center could access my port in my left chest for my factor 8 infusions twice a week. He was adament that it could and that Lacey Barnett and/or Megan Perry should contact him since there seem to be a problem with the last time he had informed them that it was ok.
On 7-27-19, I wrote a Formal Grievance (#1907-209-121) about the unnecessary delay to have my port removed since Lacey Barnett and Megan Perry refuse to access it for months now. Also, the on-going pain I was experiencing every time I was getting my Factor 8 infusions by my arms.
On 8-11-19, I was taken to Jacksonville Memorial hospital because my port was expose (coming through my skin) and was infected again. I was experiencing much pain and had to be put on antibiotics and had to stay for 3 days until my port was finally removed from my left chest.
On 8-15-19, Lacey Barnett and Megan Perry had ask about what happened on 8-11-19. Once I had told them they laughed and joked "that is a way to get it removed" refering to my port.

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes

☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Sumter Correctional Institution and Reception Medical Center.

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes

☐ No

☐ Do not know

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes

☐ No

☐ Do not know

If yes, which claim(s)? The deliberate Indifference to my Severe medical needs, the unsafe enviroments I have been place in, negligence, and medical malpractise I had experienced in all relevant events mentioned in my statements of facts.

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑ Yes

☐ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☑ Yes

☐ No

E. If you did file a grievance:

1. Where did you file the grievance? Sumter Correctional Institution and the Reception medical Center (RMC).

2. What did you claim in your grievance? That all mentioned complaints above was reflection of mentioned defendants deliberate indifference to my severe medical needs, the unsafe enviroment(s) I have been put in due to defendants actions or lack there of. Also, negligence and medical malpractise.

3. What was the result, if any? All my grievances were denied on all levels of the grievance Process.

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)* Yes, the grievance process is completed so there is nothing futher I could do but seek relief from the courts.

F. If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here:

N/A

2. If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

N/A

G. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

N/A

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

N/A

A. Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes

☑ No

B. If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s) N/A

   Defendant(s) N/A

2. Court *(if federal court, name the district; if state court, name the county and State)*

   N/A

3. Docket or index number

   N/A

4. Name of Judge assigned to your case

   N/A

5. Approximate date of filing lawsuit

   N/A

6. Is the case still pending?

   ☐ Yes

   ☑ No

   If no, give the approximate date of disposition. N/A

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   N/A

C. Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☑ No

D. If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1. Parties to the previous lawsuit

   Plaintiff(s) N/A

   Defendant(s) N/A

2. Court *(if federal court, name the district; if state court, name the county and State)*

   N/A

3. Docket or index number

   N/A

4. Name of Judge assigned to your case

   N/A

5. Approximate date of filing lawsuit

   N/A

6. Is the case still pending?

   ☐ Yes

   ☑ No

   If no, give the approximate date of disposition N/A

7. What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   N/A

## IX. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 9-16-19

Signature of Plaintiff [signature]

Printed Name of Plaintiff Nathan Fox

Prison Identification # R50090

Prison Address RMC-Main Unit PO Box 628

Lake Butler, FL 32054

*City* *State* *Zip Code*

### B. For Attorneys

Date of signing: ____________

Signature of Attorney ____________

Printed Name of Attorney ____________

Bar Number ____________

Name of Law Firm ____________

Address ____________

*City* *State* *Zip Code*

Telephone Number ____________

E-mail Address ____________