UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

NATHAN G. FOX,

    Plaintiff,

v.                                Case No. 3:19-cv-1079-MMH-JRK

V. MONTOYA, et al.,

    Defendants.

## ORDER OF DISMISSAL

### I.  Status

Plaintiff Nathan Fox, an inmate of the Florida penal system, initiated this action on September 16, 2019,[1] by filing a pro se civil rights complaint under 42 U.S.C. § 1983 (Complaint; Doc. 1). Fox names as defendants Dr. V. Montoya, Lacey Barnett, Megan Perry, O. McKenzie, Warden J. DeBell, Assistant Warden Elizabeth Mallard, Secretary of the Florida Department of Correction Mark Inch, Dr. A. Negron, and Dr. Bassa (collectively Defendants). In the Complaint, Fox alleges Defendants were deliberately indifferent to his

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

serious medical needs in violation of the Eighth Amendment, violated his right to due process under the Fourteenth Amendment, and committed state law torts of negligence and medical malpractice. Before the Court is Montoya's motion to dismiss filed on June 22, 2020. See Defendant Vernon Montoya, M.D.'s Motion to Dismiss and Incorporated Memorandum of Law (Motion; Doc. 23). Fox filed a response, see Plaintiff's Response to Defendant's Motion to Dismiss (Response; Doc. 70), with exhibits (Resp. Ex.). In the Response, Fox also seeks leave to amend his Complaint. The Motion is ripe for review.

## II. Fox's Allegations

Fox, who suffers from hemophilia A, asserts that on November 4, 2017, two inmates stabbed him causing severe bleeding. Complaint at 10. Once in the medical department, Fox explained what occurred and his status as a hemophiliac to Officer Belemy, Captain Rutledge and nurse Moore. Id. Fox asserts that these three "were not familiar with hemophilia or trained to handle [him] in a[n] emergency situation," because they were asking him questions about his medical condition and past treatments and Moore was shocked by the amount of bleeding. Id. Moore took Fox to the emergency room in the back of the medical department and "pulled 6,000 units of [Fox's] factor 8 medication to reach room "temperature] before administration . . . ." Id. Nurse McKenzie arrived and began questioning why Fox was there and why the Factor 8 medication had been removed from the refrigerator. Id. According

to Fox, McKenzie ignored Moore's advice that due to the excessive bleeding Fox needed an extra dose of Factor 8. Id. Instead, McKenzie returned the medication to the refrigerator and said he was in charge and that he did not "care if he bleeds out." Id. Fox maintains that Rutledge and Belemy did not support Moore in her plea to give Fox additional Factor 8. Id. at 11.

An hour later, Fox was transported to an off-site hospital, where he was assessed by hospital staff and "sutured before [he] could get any of [his] factor 8 medication." Id. Fox asserts that he returned to Sumter and laid on the examining table in pain, but McKenzie would not allow nurses to clean or treat him, and eventually he was placed back in confinement. Id. He maintains that it took two or three days before he received proper medical care. Id. According to Fox, DeBell, Negron, and Montoya failed to correct McKenzie's error or provide him with the medical attention he needed. Id.

Fox alleges that on December 16, 2017, he wrote a formal medical grievance, #1712-307-054, concerning his treatment following the stabbing attack and "Negron's reference to FDOC policy that did not meet my severe medical needs." Id. at 12. Fox maintains that Negron stated there is a "FDOC policy requiring the health services department to make/create special emergency procedure[s] and/or treatment for any specific inmates, and there is no such thing as an emergence [sic] dose of my factor 8 medication," and that a nurse needs a verbal or written order to dispense Factor 8 medication over

3

what is already prescribed. Id. Fox asserts that Defendants should have created a policy or procedure authorizing the use of an additional dose of Factor 8 in emergency situations. Id.

On the morning of January 1, 2019, Fox asserts that he awoke to find his right ankle was swollen and painful, which he believed was indicative of internal bleeding in his ankle. Id. at 13. Upon arrival at the urgent care clinic, the nurses declined to give him Factor 8 medication, despite his swollen ankle and pain and the fact he would have received the medication that day from the cancer center if it was open. Id. The unnamed nurses and Bassa refused to give him the medication and sent him back to his dormitory. Id. Bassa allegedly told Fox that he would be fine, his issue was an "oncology issue," and he could get his medication "that upcoming [Wednesday] when the Cancer Center would be open again." Id. Fox contends that he was left to limp around in pain until Wednesday. Id.

On May 11, 2019, Fox went to the urgent care clinic because he was experiencing pain, redness, and swelling around a port-o-cath in his left chest where he receives his Factor 8 infusions. Id. at 15. Fox told the staff at the clinic that Barnett and Perry had refused to access his port a few months prior "due to their inability to access" it. Id. He maintains that a specialist at Jacksonville Memorial Hospital, Dr. Montoya, and Dr. Robinson gave their approval to continue to use the port. Id. The urgent care clinic staff ran tests

4

and determined his port was infected and he was put on antibiotics. Id. On May 13, 2019, Fox asked to have his port removed due to Barnett and Perry's decision not to use it and because it was infected. Id. Approximately ten days later, Fox had a conversation with Barnett and Perry during which he asked if they were going to access his port again now that the infection had cleared, and he had gotten approval from Dr. Robinson. Id. They both refused to access the port, with Barnett stating Fox had a lot of veins in his arms to use. Id. On May 31, 2019, officials answered Fox's request to remove his port by stating that removal would need to be approved by Montoya and Bossa. Id.

On June 7, 2019, Fox had his "chronic" appointment with Montoya. Id. at 14. Fox informed Montoya that Barnett and Perry were not accessing his left chest port and, instead, administering his Factor 8 medicine through his veins, but Montoya ignored this information. Id. at 14-15. According to Fox, Montoya told Fox his Factor 8 levels were low and he was going to increase his medication from 7,500 units to 9,000 units twice a week. Id. at 14. Fox told Montoya that his Factor 8 levels were low because he was a severe hemophiliac, and he also told Montoya that he had not recently had any bleeding incidents since January. Id. Despite this information, Montoya still wanted to increase his Factor 8 medication, even though Fox had warned him about "the life-threatening issues if he continued to increase my medication without any sound medical reasoning toward a person with hemophilia." Id.

5

Fox asserts that he was forced to take his Factor 8 medication on June 14, 2019, which caused a severe headache, upset stomach, dizziness, and other unnamed side effects. Id. After telling the nurses at the cancer center, Barnett and Perry, about these side effects, they told him to refuse his Factor 8 medication if Fox did not like Montoya's treatment plan. Id.

Fox also had a follow-up appointment with Dr. Robinson on July 31, 2019, concerning his head injury following an incident where an inmate hit him with a lock. Id. at 16. Fox asked if it was okay for Barnett and Perry to access his chest port to administer Factor 8 medication, and he said that it was fine and that Barnett and Perry should contact him "since there seem[ed] to be a problem with the last time he had informed them that it was ok." Id. On July 31, 2019, Fox wrote a formal grievance, #1907-209-121, concerning the delay in removing his port due to Barnett and Perry's refusal to use it, as well as ongoing pain he experienced from getting his Factor 8 infusions through his arms. Id. On August 11, 2019, Fox was transported to Jacksonville Memorial Hospital because his port was exposed through his skin and was infected again, causing him pain. Id. He stayed in the hospital for three days until his port was finally removed. On August 15, 2019, Barnett and Perry asked Fox about what happened on August 11th. Id. After he told them, "they laughed and joked 'that is a way to get it removed' refer[r]ing to [his] port." Id.

6

According to Fox, Defendants were deliberately indifferent to his severe medical need, provided unsafe conditions, and acted negligently. Id. at 9. As relief, Fox requests the following: 5.5 million dollars in damages for pain and suffering, revision of FDOC policies and procedures regarding treatment for patients with hemophilia, his release from prison, and a temporary restraining order against all Defendants until "court issues are resolved." Id. at 8.

### III.   Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the

7

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837,

839 (11th Cir. 2011)[2] (quoting GJR Invs., Inc. v. Cty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706).

## IV. Eighth Amendment Standard

Pursuant to the Eighth Amendment of the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id. The challenged condition must be extreme and must pose an unreasonable risk

---

[2] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

9

>of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.
>
>Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh circuit has explained that

>To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir.2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of

10

> that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir.2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.2003) (quotation omitted).

Easley v. Dep't of Corr., 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem). However, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under

11

the Eighth Amendment." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

## V.   Discussion

In the Motion, Montoya argues that the Court should dismiss the Complaint against him for three reasons. "First, Fox has failed to state his claims with sufficient specificity so as to allow for response by Dr. Montoya." Motion at 2. Montoya maintains that the Complaint "does not identify specific causes of action against each defendant." Id. Upon review of the Complaint and reading Fox's pro se allegations liberally, the Court finds the Complaint is not due to be dismissed on this ground. Fox alleges that the "named defendants"

12

violated his Eighth and Fourteenth Amendment rights and were negligent under Florida's medical malpractice law. Complaint at 9. The Court reads this allegation as raising three causes of actions alleging claims of deliberate indifference under the Eighth Amendment, a Fourteenth Amendment due process violation, and medical negligence under Florida law against all Defendants. As such, Montoya's Motion is due to be denied on this ground.

Next, Montoya contends that Fox has failed to sufficiently allege a claim of deliberate indifference. Motion at 2-3, 4-10. Montoya maintains that the Complaint fails to establish that Montoya disregarded Fox's Hemophilia A. Id. Instead, it demonstrates that Montoya provided regular treatment, monitored Fox's Factor VIII levels, and even adjusted the dosing. Id. Indeed, Montoya notes that Fox's own allegations show that he did not experience any bleeding from January up until and through June 7, 2019. Id. According to Montoya, "[w]here a Hemophiliac's Factor VIII levels are maintained, and they have not been experiencing bleeding, there is no serious medical need to be ignored." Id. at 6. Regarding Fox's allegations that Montoya failed to direct the nurses to use Fox's port-a-cath for administration of medication, which Fox alleges was infected, he asserts that "Plaintiff has not presented any evidence that standard intravenous administration of the medication caused or exacerbated any medical issue, nor has he exhibited that this form of treatment affects his Hemophilia A in any way." Id. Additionally, Montoya argues that Fox has

13

alleged nothing more than a disagreement over the treatment plan and has raised, at best, only a negligence claim, which is insufficient to establish an Eighth Amendment violation. Id. at 9-10. In the Response, Fox argues that he alleged sufficient fact to state a claim for relief on Eighth Amendment grounds. Response at 3-5.

In reviewing the Complaint, Fox makes specific allegations that Montoya was informed about McKenzie's decision not to give Fox an additional dosage of his Factor 8 medication but refused "to place any procedure/protocol for emergency situation for [Fox] as a hemophiliac." Complaint at 11. However, Fox also alleges that medical staff did not believe emergency doses of Factor 8 medication should be administered.[3] Id. at 12. Accordingly, Fox has merely alleged a difference in medical opinion and judgment, which is insufficient to establish an Eighth Amendment violation. See Adams, 61 F.3d at 1545.

Fox also contends that Montoya ignored his concerns that Barnett and Perry were not using his chest port-a-cath to administer the Factor 8 medication. Complaint at 14-15. This allegation does not establish an Eighth Amendment violation either. Fox received his Factor 8 medication, but he contends it should have been administered in a different fashion. In other

---

[3] Notably, Fox alleges in the Complaint that Factor 8 medication is refrigerated and must be brought to room temperature before administration. Complaint at 10. The inherent wait involved in administering Factor 8 medication, cuts against his claim that such mediation can be given in a quick manner as to address an imminent emergency.

14

words, Fox takes issue with the manner in which he was treated, not a failure to be treated at all. This disagreement over how to administer his medication amounts to a challenge to Montoya's medical judgment, which does not demonstrate an Eighth Amendment violation. See Adams, 61 F.3d at 1545.

According to Fox, Montoya also wanted to increase Fox's Factor 8 medication dosage "from 7,500 units to 9,000 units twice a week" because Fox's Factor 8 levels were "kind of low." Id. at 14. However, Fox maintains that he warned Montoya that as a hemophiliac his Factor 8 levels are naturally low and that increasing his Factor 8 levels could become life-threatening. Id. Fox asserts that Montoya did not heed his warnings and Fox was "force[d] to take [his] scheduled factor 8 infusion on" June 14, 2019, after which Fox experienced "a severe headache, upset stomach, dizziness, and few other side-effects." Id. These allegations demonstrate that Montoya was treating his hemophilia and made a medical judgment that increasing the dosage was necessary due to Fox's low Factor 8 levels. Again, Fox has described, not deliberate indifference, but rather a disagreement over Montoya's medical judgment that, at most, would establish a negligence claim. See Adams, 61 F.3d at 1545.

Additionally, Fox has failed to state a claim of a due process violation under the Fourteenth Amendment against Montoya. To the extent Fox argues the deficiencies in his medical care violated the Fourteenth Amendment, such claims are appropriately brought under the Eighth Amendment because he is

15

a prisoner and not a civil detainee. See Bilal v. Geo Care, LLC, 981 F.3d 903, 915 (11th Cir. 2020) (recognizing that conditions of confinement claims brought by civil detainees are analyzed under the Fourteenth Amendment and those brought by criminal prisoners are analyzed under the Eighth Amendment). Accordingly, Fox's Fourteenth Amendment claims against Montoya are due to be dismissed.

As to Fox's medical malpractice claims, Montoya asserts that Fox failed to comply with § 768.28, Florida Statutes. Id. at 3, 10-11. Specifically, Montoya asserts that as a condition precedent to filing suit, Fox was required to serve a notice of claim allowing for a pre-suit investigation of the claim. Id. However, Fox failed to do so. Id. Therefore, Montoya alleges any medical malpractice claims against Montoya should be dismissed pursuant to state law. Id. Fox concedes that he failed to comply with the notice requirement but asks the Court to overlook this failure to comply. Response at 2.

Under Florida law, "[a] suit against a defendant in his official capacity is, in actuality, a suit against the governmental entity which employs him." Stephens v. Geoghegan, 702 So. 2d 517, 527 (Fla. 2d DCA 1997) (citations omitted); see also § 768.28(10)(a), Fla. Stat. ("Health care providers or vendors, or any of their employees or agents, that have contractually agreed to act as agents of the Department of Corrections to provide health care services to inmates of the state correctional system shall be considered agents of the State

16

of Florida, Department of Corrections, for the purposes of this section, while acting within the scope of and pursuant to guidelines established in said contract or by rule."). Pursuant to § 768.28(6)(a), "[a]n action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency [. . .] within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing . . . ."[4] Notably, "the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action[.]" § 768.28(6)(b), Fla. Stat. When pleading conditions precedent, the Federal Rules of Civil Procedure require only a general allegation "that all conditions precedent have occurred." Fed. R. Civ. P. 9(c).

Here, Fox has failed to allege, generally or otherwise, that he satisfied the condition precedent for filing a tort action against Montoya, an agent of a State agency. In light of Fox's failure to allege satisfaction of this condition precedent and Fox's concession that he failed to comply, which the Court has no authority to ignore, the Motion is due to be granted as to this claim. Based on the above analysis, Montoya's Motion is due to be granted to the extent that

---

[4] There are exceptions, but no exception applies here. See § 768.28(6)(a)1-2, Fla. Stat.

the Court determines Fox has failed to state any viable claim against Montoya and Montoya is due to be dismissed as a Defendant in this action.

**ORDERED**:

1)   Montoya's Motion to Dismiss (Doc. 23) is **GRANTED** to the extent that all claims against Vernon Montoya are dismissed.

2)   The Clerk shall terminate Vernon Montoya as a Defendant and make the appropriate notation on the docket.

3)   In any other respect, the Motion is **DENIED**.

4)   Fox's request to amend the Complaint is **DENIED without prejudice** to filing a motion for leave to amend that either adequately explains the substance of the proposed amendment or attaches a copy of the proposed amendment. See Cita Trust Company AG v. Fifth Third Bank, 879 F.3d 1151 (2018).

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of March, 2021.

MARCIA MORALES HOWARD
United States District Judge

Jax-8
C:   Nathan G. Fox #R50090
     Counsel of record

18